**STATE of Utah, Plaintiff and Appellee,**

v.

**Steven PEDERSEN, Defendant
and Appellant.**

**No. 890645–CA.**

Court of Appeals of Utah.

Dec. 13, 1990.

Rehearing Denied Jan. 15, 1991.

Frances M. Palacios and Richard G. Uday (argued), Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Atty. Gen., and Christine F. Soltis, Asst. Atty. Gen. (argued), Salt Lake City, for plaintiff and appellee.

Before GREENWOOD, JACKSON and ORME, JJ.

JACKSON, Judge:

Steven L. Pedersen (Pedersen) appeals his jury conviction of aggravated sexual abuse of a child, a first-degree felony, in violation of Utah Code Ann. § 76-5-404.1 (1990). He asserts two claims of error: (1) the evidence presented at trial was insufficient to support his conviction; and (2) the trial court's refusal to give his jury instruction on reasonable doubt resulted in prejudice. We affirm.

## FACTS

In 1981 Steven Pedersen married Shauna Pedersen, who had two daughters from a previous marriage: M.G., born in 1974, and a younger sibling.

On December 31, 1987, Pedersen and his wife had a fight that was witnessed by M.G. The next day, M.G. informed her mother that Pedersen had molested her on divers occasions starting in 1986. In January 1988, M.G. and her mother met with Detective Collins of the Salt Lake City Police and filed charges against Pedersen for the sexual abuse of M.G.

In February 1988, M.G. met with Detective Collins without her mother. At this meeting, she recanted her earlier statement of sexual abuse by Pedersen. She stated to Detective Collins that Pedersen had tried to touch her but she told him to stop and he left her alone after that incident.

Following the recantation by M.G., Pedersen and his wife reconciled and he moved back into the family home. At this time, M.G. had moved in with her grandmother. The marital reconciliation lasted until approximately July of 1988.

In August 1988, Pedersen moved out of the family home and M.G. renewed her charges of sexual abuse against him that month. Detective Collins requested that Pedersen come in to see her.

On October 19, 1988, Pedersen appeared at the police station to meet with Detective Collins. Detective Collins was unavailable and asked Deputy Patrick to speak with Pedersen. Deputy Patrick was not personally familiar with the case nor did he have the case file.

Deputy Patrick interviewed Pedersen for seventeen minutes. During this interview, Pedersen confessed to sexual abuse of M.G. During the interview, Deputy Patrick noticed that Pedersen was unkempt in appearance and, later in the interview, asked if Pedersen had been drinking.

At trial, Pedersen testified that he had been drinking excessively prior to his confession. He stated that, although he had not been drinking on the day of the interview, he was suffering from "D.T.'s," delir-

ium tremens, at the time of the confession. He testified that the D.T.'s caused him to hear voices. Pedersen testified that these voices told him what to confess. He denied voluntarily confessing to committing any sexual abuse.

Mark Middleton[1] also testified that he remembered the day of Pedersen's interview and that Pedersen's behavior was "off the wall." Middleton described the "off the wall" behavior as answering the door when no one was there, answering to somebody that wasn't there and asking questions and making statements that didn't make sense, all interlaced with phrases that seemed normal and coherent.

At trial, M.G. testified to numerous occasions of sexual abuse by Pedersen. On cross-examination, she was asked about her prior recantation. She explained that she was scared and that she did not want to be poor like the last time Pedersen left the home. Defense counsel explored the inconsistencies between M.G.'s testimony and her prior statements. Those inconsistencies consisted of her willingness to reveal more facts each time she told of her abuse. M.G.'s basic testimony, however, was consistent with prior statements. The jury heard the differences between her original accounts and her augmented accounts and eventually returned a verdict convicting Pedersen of sexual abuse of a child.

At the second phase of the trial, the jury was waived and the trial court determined that Pedersen met the aggravating circumstance to elevate the crime to aggravated sexual abuse of a child.[2]

## I

First, we will examine Pedersen's challenge to the sufficiency of the evidence. He contends M.G.'s testimony at trial was inconsistent with her previous statements and therefore her testimony is wholly unreliable. He also contends that his confession obtained by the police was unreliable because he was under the influence of delirium tremens. We are not persuaded.

In the face of a challenge to the sufficiency of the evidence, the standard of review is that the evidence and the reasonable inferences which may be drawn therefrom must be viewed in the light most favorable to the jury verdict. *State v. Johnson*, 774 P.2d 1141, 1147 (Utah 1989). A jury conviction is reversed for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted. *Id. State v. Cobb*, 774 P.2d 1123, 1128 (Utah 1989).

Applying this standard we see that, although M.G.'s testimony at trial was somewhat different from her previous statements,[3] the jury simply chose to believe M.G. rather than Pedersen. "Such a choice between conflicting testimony is within the province of the jury." *State v. Ireland*, 773 P.2d 1375, 1379 (Utah 1989); *accord State v. Gentry*, 747 P.2d 1032, 1039 (Utah 1987).

Pedersen argues that the facts of this case are similar to *State v. Walker*, 743 P.2d 191 (Utah 1987), and therefore *Walker* should control. But *Walker* is distinguishable. In *Walker*, the defendant was convicted in the trial court of aggravated sexual abuse of a child after a bench trial. Bench trial verdicts are reviewed under the clearly erroneous standard specified in the rules of civil procedure. *Id.* at 193. *See also* Utah R.Civ.P. 52(a) (repealed

---

1. Mark Middleton was living with Pedersen at this time.

2. Pedersen's prior conviction for sexual abuse of a child, of which the jury did not learn during the trial's "guilt phase," elevated this conviction to aggravated sexual abuse of a child.

3. M.G.'s testimony was inconsistent with respect to her ability to relate additional incidents of abuse and increased severity of the abuses. She never wavered with respect to the material elements of the crime charged.

1990); Utah R.Civ.P. 81(e). As stated before, the standard of review of a jury verdict in criminal cases is that the evidence and the reasonable inferences which may be drawn therefrom must be viewed in the light most favorable to the jury verdict. Thus, the less deferential standard of review applicable in *Walker* was not applicable in this case.

■ In *Walker*, the victim's testimony at trial was internally inconsistent and conflicted as to the material elements of the crime charged, which is not the case here. The victim's testimony in *Walker* was elicited through leading questions and it was clear that the alleged victim's testimony was substantially influenced by the questions posed. After examining the testimony of M.G. in this case, we find that she was not improperly influenced by the questions posed to her during examination. M.G. testified to all the elements of the crime charged. We view this case as hinging on the credibility of the witnesses. Credibility is within the province of the jury, to which we defer.

## II

■ Next, we turn to Pedersen's contention that the trial court's refusal to give his proposed instruction on reasonable doubt was error. An appeal challenging the refusal to give jury instructions presents a question of law only. Therefore, we grant no particular deference to the trial court's rulings.

■ The trial court gave the jury the following reasonable doubt instruction:

4. Defendant's proposed reasonable doubt instruction:
> All presumptions of law, independent of evidence, are in favor of innocence, and a defendant is presumed innocent until he is proved guilty beyond a reasonable doubt. And in case of a reasonable doubt as to whether a defendant's guilt is satisfactorily shown, he or she is entitled to an acquittal.
> I have heretofore told you that the burden is upon the State to prove the defendant guilty beyond a reasonable doubt. Now by reasonable doubt is meant a doubt that is based on reason and one which is reasonable in view of all the evidence. A reasonable doubt is a

INSTRUCTION NO. 7

All presumptions of law, independent of evidence, are in favor of innocence, and a defendant is presumed innocent until he is proved guilty beyond a reasonable doubt. And in case of a reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to an acquittal.

I have heretofore told you that the burden is upon the state to prove the defendant guilty beyond a reasonable doubt. Proof beyond a reasonable doubt does not require proof to an absolute certainty. Now by reasonable doubt is meant a doubt that is based on reason and one which is reasonable in view of all the evidence. It must be reasonable doubt and not a doubt which is merely fanciful or imaginary or based on wholly speculative possibility. Proof beyond a reasonable doubt is that degree of proof which satisfies the mind, convinces the understanding of those who are bound to act conscientiously upon it and obviates all reasonable doubt. A reasonable doubt is a doubt which reasonable men and women would entertain, and it must arise from the evidence or the lack of evidence in this case.

Pedersen asserts that because the trial court failed to give his proposed reasonable doubt instruction,[4] he was prejudiced. Since we conclude the court's instruction was appropriate, we need not consider whether defendant's proposed instruction might also have been proper or even pref-

> doubt which reasonable men and women would entertain, and it must arise from the evidence or the lack of evidence in this case. Depending on the circumstances, a mere possibility may create reasonable doubt. Fanciful or wholly speculative possibilities ought not to defeat proof beyond a reasonable doubt.
> If, after an impartial consideration and comparison of all the evidence in the case, you can candidly say that you have the kind of doubt which would cause a person to hesitate to act, you have a reasonable doubt.
> Deciding that someone has committed a crime beyond a reasonable doubt is different

erable. We hold that the instruction given this jury was an appropriate statement of Utah law and the trial court did not err by declining to use Pedersen's proposed jury instruction.

In *State v. Johnson*, 774 P.2d 1141, 1147–49 (Utah 1989), the majority essentially adopted the analysis of Justice Stewart's dissent in *State v. Ireland*, 773 P.2d 1375, 1380–82 (Utah 1989), for review of the appropriateness of a reasonable doubt instruction. We therefore also apply Justice Stewart's analysis to the instruction given here.

First, "the instruction should specifically state that the State's proof must obviate all reasonable doubt," *Ireland*, 773 P.2d at 1381, and the defendant should be convicted only if guilt is shown beyond a reasonable doubt. Here the instruction contained a clear and unambiguous statement of the above concept.

Second, it is not proper to instruct a jury that a reasonable doubt is one which "would govern or control a person in the more weighty affairs of life." *Id.* "An instruction that does that tends to diminish and trivialize the constitutionally required burden-of-proof standard." *Id.* The instruction given did not define reasonable doubt in terms of the "more weighty decisions in life." It clearly articulated that the burden of proof was on the State. We hold that this definition of reasonable doubt did not tend to diminish and trivialize the required burden-of-proof standard. Nothing in *Johnson* or *Ireland* suggests that the instruction must specifically negate the "weighty decisions of life" analo-

gy, as defendant's proposed instruction would have done. *See* note 4, *supra*.

Finally, "it is inappropriate to instruct that a reasonable doubt is not merely a possibility" *Ireland*, 773 P.2d at 1382, although it is permissible to instruct that a "fanciful or wholly speculative possibility ought not to defeat proof beyond a reasonable doubt." *Id.* The trial court's instruction that reasonable doubt "does not require proof to an absolute certainty" does not diminish the prosecution's burden of proof by implying that the prosecution need not obviate a real or substantial doubt. Here the instruction specifically stated that "[p]roof beyond a reasonable doubt is that degree of proof which satisfies the mind, convinces the understanding of those who are bound to act conscientiously upon it and obviates all reasonable doubt."[5] We conclude that this instruction is an accurate definition of the burden-of-proof placed upon the State.

Inasmuch as the reasonable doubt instruction given to the jury was an appropriate definition of reasonable doubt, we hold that the trial court did not err in refusing to use Pedersen's proposed jury instruction.

We affirm defendant's conviction.

GREENWOOD and ORME, JJ., concur.

from making decisions concerning the even more weighty affairs of life. A jury must have a greater assurance of the correctness of its decision than individual jurors are likely to have in making the weighty decisions confronted in their own lives. In such affairs of life, a person looks forward and, based on a degree of hope, determination and personal resolve, makes a decision that involves a degree of risk. However, this decision is revocable or at least salvageable.
A decision to convict looks backward. It is irrevocable. It demands reason, impartiality

and common sense rather than hope, determination or willingness to undertake a person [sic] risk. You must have a greater assurance of correctness of this decision than you normally have in making the weighty decisions in your life.

5. This clause was taken from the reasonable doubt instruction at issue in *Johnson*. The clarity of this clause was not specifically addressed in *Johnson*.