STATE of Utah, Plaintiff and Appellee,

v.

Floyd Eugene MAESTAS, Defendant
and Appellant.

No. 900443–CA.

Court of Appeals of Utah.

July 23, 1991.

Kenneth R. Brown, Salt Lake City, for
defendant and appellant.

R. Paul Van Dam, Atty. Gen., and Annina M. Mitchell, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before BENCH, GARFF and RUSSON, JJ.

## OPINION

BENCH, Presiding Judge:

Appellant, Floyd Eugene Maestas, appeals his conviction of burglary of a dwelling, a second degree felony in violation of Utah Code Ann. § 76–6–202 (1990), and theft under $100, a class B misdemeanor in violation of Utah Code Ann. § 76–6–404 (1990). We affirm.

## FACTS

Sylvia, Phyllis, and Helen Demetropolos returned home at approximately 7:00 p.m. on August 21, 1989. As they entered the back door of their home, they found the door's window broken, blood spattered on the walls of the hallway and kitchen, and the house in general disarray. While Phyllis called 911, Helen noticed someone towards the back of the house and pursued him out the back door. She saw only the back of his head. Sylvia also saw the back of the man as he fled the house. Phyllis ran out of the house yelling that they had been robbed. Fariborz Khedmati and his boss, who were across the street at the time, began pursuing the man. They eventually caught up with him and asked what he had stolen. The man said he had not stolen anything and warned them to leave him alone because he had a knife in his pocket. When Khedmati left to telephone the police, the man fled. In a photo spread a few days later, and at trial, Khedmati identified defendant as the man he had pursued.

At the time of the break-in, defendant was a parolee, required by the conditions of his parole to refrain from consuming alcohol and to be at his residence between the hours of 7:00 p.m. and 6:00 a.m. On August 21, 1989, the same night as the burglary, defendant's parole officer, Scott Carver, went to defendant's residence at approximately 10:30 p.m., and was informed that he was not home and was probably at his girlfriend's house. Carver and his partner, Kevin Westover, went to defendant's girlfriend's house. As they approached the house, they saw defendant trying to flee out of the back door. Westover went to the back of the house and ordered him to halt and come out of the house. Defendant complied and he was arrested for violating his parole. At the jail, Carver noticed a cut and dried blood on the palm of defendant's hand. During an inventory search at the jail, the jailer removed a piece of glass with blood on it from defendant's pocket and turned it over to Westover. Defendant was also wearing a gold chain from which hung a cross embedded with a white stone.

On August 22, Carver was notified that defendant was a suspect in a break-in during which glass was broken. Consequently, the piece of glass taken from defendant's pocket was turned over to Detective Jensen. Jensen showed the Demetropolos sisters and Fariborz Khedmati a photo spread. The Demetropolos sisters could not identify defendant; however, Khedmati, identified him as the man he had pursued. Jensen executed an affidavit for a search warrant to seize the clothing and the gold chain taken from defendant at the jail. After the gold chain was identified as having been stolen in the burglary, Jensen executed another affidavit for a search warrant to take a blood sample from defendant.

Defendant filed a motion to suppress the items taken from his person during his booking, claiming that his warrantless arrest violated the fourth amendment. He also filed a motion to suppress, contending that the seizure of his blood and his belongings at the jail was unreasonable because the warrants authorizing the seizures were issued on the basis of two affidavits containing false information. Defendant also filed a motion to dismiss based on denial of his right to a speedy trial. The court denied all three of his motions.

At trial, the jury returned verdicts of guilty on the charges of burglary of a dwelling, a second degree felony, and theft

under $100, a class B misdemeanor. The following issues are raised on appeal: (1) Was defendant's right to a speedy trial violated? (2) Is a warrantless arrest of a parolee lawful, and the evidence seized therefrom admissible? (3) Did the affidavits in support of the search warrants contain false and misleading information? (4) Was the trial court's jury instruction for reasonable doubt improper? (5) Were defendant's due process rights violated because the trial court excluded alibi testimony?

## STANDARD OF REVIEW

■ We will not disturb the factual determinations of the trial court unless such findings are clearly erroneous. *State v. Hargraves,* 806 P.2d 228 (Utah App.1991). However, the issues raised on appeal that present questions of law will be reviewed for correctness with no deference to the trial court. *State v. Wilcox,* 808 P.2d 1028, 1031–32 (Utah 1991).

## RIGHT TO SPEEDY TRIAL

■ Defendant claims that his right to a speedy trial was violated. He relies on Utah Code Ann. § 77–29–1(4) (1990), which provides:

> In the event the charge is not brought to trial within 120 days or within such continuance as has been granted, and defendant or his counsel moves to dismiss the action, the court shall review the proceeding. If the court finds that the failure of the prosecuting attorney to have the matter heard within the time required is not supported by good cause, whether a previous motion for continuance was made or not, the court shall order the matter dismissed.

Defendant was arrested on September 12, 1989; he asserted his right to speedy trial on October 30, 1989; and was brought to trial on July 25, 1990. The 316–day

period of time between arrest and trial exceeds the statutory directive and consequently acts as a "triggering mechanism" for heightened scrutiny of defendant's claim that his right to a speedy trial was denied. *State v. Hoyt,* 806 P.2d 204 (Utah App.1991) (citing *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972)).

In *State v. Trafny,* 799 P.2d 704 (Utah 1990), the Utah Supreme Court adopted the *Barker* test as the standard for evaluating whether a defendant's right to a speedy trial was violated under the Utah Constitution. In *Barker,* the Supreme Court outlined four factors in a balancing test: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertions of his right, and (4) prejudice to the defendant. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192.

The first factor we consider is the length of delay. Defendant was arrested on September 12, 1989, and trial began on July 25, 1990. This 316–day period is considerable, but it falls within the range of delays that have been upheld as constitutional. *See Trafny,* 799 P.2d at 708 n. 16 (citing various cases with delays ranging from 3½ months to 4½ years). Moreover, in applying a balancing test analysis, the length of delay is not solely dispositive of the speedy trial issue and so it must be considered along with all the other factors.

Next, we consider the reason for delay. The major portion of the delay is directly attributable to the defense. Defendant filed several continuances, changed counsel twice, and agreed to postpone trial until after the disposition of his pretrial motions.[1] When a defendant causes a trial to be delayed, he temporarily waives the right to a speedy trial. *State v. Banner,* 717 P.2d 1325, 1329–30 (Utah 1986); *see also State v. Velasquez,* 641 P.2d 115, 116 (Utah 1982).

1. A preliminary hearing set for October 5, 1989, was delayed because defendant filed a continuance. At defendant's November 24 arraignment, a trial date was set for December 21. Defendant obtained a continuance of that trial date until February 22, 1990. The delay from February 22 through March 9 was the result of defendant's request for new counsel. On March 9, defendant agreed to postpone trial until after disposition of his pretrial motions. At the June 6th hearing the trial date was set for July 25. Accordingly, 209 of the 316 days between the arrest of defendant and his trial were directly attributable to defendant's own actions.

Next, we consider whether the defendant asserted his right to a speedy trial. He asserted this right by written notice to the state prison warden on October 30, 1989. However, even though the demand was timely, his later requests for continuances were inconsistent with his request for a speedy trial.

Finally, we consider whether defendant was prejudiced by the delay. In *Barker*, the Court identified three areas of concern: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. Defendant failed to present any argument on these points and nothing in the record indicates that his ability to effectively defend himself was compromised by the delay.

Accordingly, because defendant's own actions were the main cause of delay and because defendant failed to show any prejudice caused by the delay, we conclude that he was not denied his constitutional right to a speedy trial.

## WARRANTLESS ARREST OF A PAROLEE

▬▬ Defendant claims that his warrantless arrest violated his fourth amendment rights against unreasonable searches and seizures. He challenges the validity of the arrest and seeks to suppress the piece of glass admitted as evidence. He relies on *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), for the proposition that absent consent or exigency, an arrest warrant is required before a suspect can be arrested in his home. While that statement of the law is true, it does not apply to the facts in this case.

At the time of his arrest, defendant was a parolee. The Utah Supreme Court ad-dressed fourth amendment rights of parolees in *State v. Velasquez*, 672 P.2d 1254 (Utah 1983). In *Velasquez*, the defendant appealed a second degree murder conviction claiming the seizure of a gun and ammunition discovered by parole officers during a warrantless search of his apartment was unconstitutional. The supreme court held that parolees have a "diminished expectation of privacy" because they are under the supervisory control of the state. Such supervisory power is necessary for the state to successfully administer the parole system. *Id.* at 1258.[2]

Consequently, the supreme court required that a parole officer need only have "reasonable grounds" or "reasonable suspicion" to investigate whether a parolee has violated parole or committed a crime before a search or seizure may be conducted. *Id.* at 1260; *United States v. Scott*, 678 F.2d 32, 35 (5th Cir.1982); *United States ex rel. Santos v. New York State Bd. of Parole*, 441 F.2d 1216, 1218 (2nd Cir.1971), *cert. denied*, 404 U.S. 1025, 92 S.Ct. 692, 30 L.Ed.2d 676 (1972); *see also State v. Blackwell*, 809 P.2d 135, 137 (Utah App.1991) (no search warrant is required for parole officers to conduct a search when they have reasonable suspicion to believe that a parolee has violated his parole).[3]

While the issue in this case is not whether a warrantless search of a parolee's premises can be conducted upon reasonable suspicion, but whether a warrantless arrest of a parolee can be made upon reasonable suspicion, the same analysis applies. On August 21, 1989 (the date of defendant's arrest), defendant was a parolee required by the conditions of his parole to refrain from consuming alcohol and to be at his residence, between the hours of 7:00 p.m. and 6:00 a.m. However, on that night, he was seen by his parole officers inside his

---

**2.** In *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), the United States Supreme Court also applied the "reasonable suspicion" standard, holding that the warrantless search of a probationer's residence was "reasonable" under the fourth amendment because it was conducted pursuant to the "special needs" of Wisconsin's state probation system. *Id.* at 873–74, 107 S.Ct. at 3168–69.

**3.** Many other jurisdictions, perhaps a majority, have adopted a reasonable grounds or a reasonable suspicion standard for searches of parolees and probationers. *See Blackwell*, 809 P.2d at 137 n. 2, and cases cited therein.

girlfriend's home at approximately 10:30 p.m. This was a clear violation of his parole. When he attempted to flee out the back door, he was told to "halt" and to come outside. When he did so, he was arrested. Because of the obvious parole violation, the parole officers clearly had a reasonable suspicion he was violating his parole and no arrest warrant was needed.

■ We conclude that when a parole officer has reasonable suspicion to believe that a parolee is violating parole, no warrant is necessary to make an arrest. Therefore, the piece of glass taken from defendant's pocket as part of an inventory search during booking was legally seized, *State v. Sterger*, 808 P.2d 122, 124–25 (Utah App.1991), and was properly admitted as evidence.

## FALSE AND MISLEADING INFORMATION IN AFFIDAVITS

■ In his motion to suppress, the defendant challenged the validity of the warrants authorizing seizure of his blood sample, and the seizure of his personal property inventoried by the jail during the booking procedure. He argues that the trial court erred in not finding that Detective Jensen knowingly, or with reckless disregard for the truth, included false and misleading information in the search warrant affidavit.

In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court stated that where a defendant shows by a preponderance of the evidence that the affiant made a false statement, intentionally, knowingly, or with reckless disregard for the truth, the false material must be set aside and probable cause determined by the affidavit's remaining content. *Id.* at 155–56, 98 S.Ct. at 2676–77. If the remaining content is insufficient to establish probable cause, the warrant must be voided. *Id.; see also State v. Nielsen*, 727 P.2d 188, 191 (Utah 1986).

Detective Jensen's affidavit contained the following relevant statement of facts to establish probable cause:

They (the Demetropolos sisters) discovered the suspect in this case, Floyd Maestas, inside the home and chased him away. They found a window broken with drops of blood. They discovered the house ransacked and a gold chain with a cross containing a white stone missing. A neighbor, witness, Fariborz Khedmati, also saw Maestas and identified him from a photo spread. Later that evening the defendant was arrested and booked on an unrelated Probations Violation. When he was booked, a piece of bloody glass was taken from the defendant's pockets, as was the gold chain with a cross with a white stone.

The specific language in the affidavit that defendant objects to is the sentence, "They (the Demetropolos sisters) discovered the suspect in this case, Floyd Maestas, inside and chased him away." Defendant argues that the affiant, Detective Jensen, asserted that the Demetropolos sisters had specifically identified Maestas as the person they saw in their home. He further argues that this statement is false because the sisters were unable to identify Maestas from a photo spread.

However, as the State contends, if the statement is read in context with the rest of the affidavit, the statement can be interpreted as simply indicating that the Demetropolos sisters had chased the suspect, who happened to be Floyd Maestas, from their home.[4] The affidavit clearly conveys the fact that the suspect chased away from the Demetropolos home had, by the time the affidavits were executed, been identified as Maestas. As stated a few sentences later in the affidavits, Fariborz Khedmati saw the suspect as he fled and, in a photo spread, identified the suspect as Maestas.

The trial court ruled after the suppression hearing that the defendant did not prove by a preponderance of the evidence

---

**4.** At the suppression hearing, Detective Jensen testified that the sentence emphasized by the defense was not intended to indicate that the Demetropolos sisters had identified Maestas in the photo spread, only that defendant had been identified by Khedmati.

that the affidavits contained false statements made knowingly or with reckless disregard for the truth. Although, the sentence in question could have been clearer about its intended message, the trial court's interpretation of the affidavit was not unreasonable. *See State v. Babbell,* 770 P.2d 987 (Utah 1989); *State v. Collard,* 810 P.2d 884 (Utah App.1991) (magistrates may interpret ambiguous statements in a reasonable manner in light of the context). Accordingly, we affirm the trial court's ruling.

## JURY INSTRUCTION ON REASONABLE DOUBT

██ Defendant next contends the trial court erred in failing to give defendant's proposed reasonable doubt instruction. He maintains that his instruction better incorporated the analysis of a proper reasonable doubt instruction as outlined in Justice Stewart's dissent in *State v. Ireland,* 773 P.2d 1375, 1380–82 (Utah 1989), and his concurring opinion in *State v. Johnson,* 774 P.2d 1141, 1147–49 (Utah 1989). The instruction actually given [5] was the same instruction this court recently approved in *State v. Pedersen,* 802 P.2d 1328 (Utah App.1990). As stated in *Pedersen,* the reasonable doubt instruction used met all three of the concerns Justice Stewart voiced in *Ireland. Id.* at 1331–32. First, the instruction specifically stated that the "State's proof must obviate all reasonable doubt," *Ireland,* 773 P.2d at 1381; second, the instruction did not define reasonable doubt as a doubt which "would govern or

control a person in the more weighty affairs of life," *Id.;* and third, it did not instruct that "a reasonable doubt is not merely an impossibility." *Id.* at 1382.[6]

The instruction given to the jury in this case was an appropriate statement of Utah law and the trial court did not err by declining to use the defendant's proposed reasonable doubt instruction. *See Pedersen,* 802 P.2d at 1331. Since the trial court's instruction was appropriate, we need not consider whether defendant's proposed instruction might also have been proper.

## EXCLUSION OF ALIBI TESTIMONY

██ Finally, defendant asserts that his conviction should be reversed because he was denied his due process right to present his defense when the trial court refused to allow his girlfriend to give alibi testimony as to when he had left her home on the day of the crime. Utah Code Ann. § 77–14–2(1) (1990), provides in relevant part:

> A defendant, whether or not written demand has been made, who intends to offer evidence of an alibi shall, not less than ten days before trial or at such other time as the court may allow, file and serve on the prosecuting attorney a notice, in writing, of his intention to claim alibi.

Defendant did not comply with the statutory requirements of filing a notice of an alibi witness. He asserts he was denied due process because the trial court's evidentiary ruling, based on section 77–14–

---

5. The trial court gave the following reasonable doubt instruction:

   All presumptions of law, independent of evidence, are in favor of innocence, and a defendant is presumed innocent until he is proven guilty beyond a reasonable doubt. And in case of a reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to an acquittal.

   I have heretofore told you that the burden is upon the state to prove the defendant guilty beyond a reasonable doubt. Proof beyond a reasonable doubt does not require proof to an absolute certainty. Now by reasonable doubt is meant a doubt that is based on reason and one which is reasonable in view of all the evidence. It must be a reasonable doubt and

not a doubt which is merely fanciful or imaginary or based on wholly speculative possibility. Proof beyond a reasonable doubt is that degree of proof which satisfies the mind, convinces the understanding of those who are bound to act conscientiously upon it and obviates all reasonable doubt. A reasonable doubt is a doubt which reasonable men and women would entertain, and it must arise from the evidence or the lack of evidence in this case.

6. For a more in-depth analysis of the reasonable doubt instruction meeting the requirements set forth by Justice Stewart in his dissent in *Ireland,* see *Pedersen,* 802 P.2d at 1331–32.

2(1), prevented him from presenting a defense.

Notice-of-alibi statutes have generally been upheld as constitutional against due process challenges. *See, e.g., Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) (notice-of-alibi statute does not deprive an accused of due process); *People v. Holiday,* 47 Ill.2d 300, 265 N.E.2d 634 (1970) (statute which excludes evidence for failure to disclose an alibi witness does not violate due process); *Bush v. State,* 203 Kan. 494, 454 P.2d 429 (1969) (excluding alibi witnesses whose names were not included in the notice filing is not a denial of due process); *People v. Sherrod,* 32 Mich.App. 183, 188 N.W.2d 221 (1971) (statute requiring defense to submit a notice of intention to rely on an alibi does not violate due process). By requiring the defendant to give notice to the prosecution of his intention to rely on an alibi as a defense, the statute prevents last minute surprises and enables the prosecution to make a full and thorough investigation of the merits of the defense. They also act as an important protection because of the ease by which alibi testimony may be manufactured or fabricated. *See* Annotation, *Validity and Construction of Statute Requiring Defendant in Criminal Case to Disclose Matter as to Alibi Defense,* 45 A.L.R.3d 958, 965 (1972).

" 'The purpose of due process is to prevent fundamental unfairness, and one of its essential elements is the *opportunity* to defend.' " *Provo City v. Werner,* 810 P.2d 469, 472 (Utah App.1991) (failure of defendant to take advantage of opportunity to obtain an independent chemical analysis did not constitute denial of due process) (quoting *State v. Snipes,* 478 S.W.2d 299, 303 (Mo.), *cert. denied,* 409 U.S. 979, 93 S.Ct. 332, 34 L.Ed.2d 242 (1972)) (emphasis in *Werner*). Defendant had the opportunity to present alibi testimony. All he needed to do was comply with the timing requirements of section 77–14–2. The witness,

whose testimony was excluded in this case, did not suddenly materialize during the trial. She was known to defendant from the outset of the case. Defendant has not shown any good cause why the requirement of notice should be waived.[7] Since he did not provide notice of his alibi witness, he did not comply with section 77–14–2, and the trial court properly excluded the alibi witness's testimony.

### CONCLUSION

For the foregoing reasons, defendant's conviction is affirmed.

GARFF and RUSSON, JJ., concur.

---

7. Utah Code Ann. § 77–14–2(4) (1990) states: "The court may, for good cause shown, waive the requirements of this section." *Compare State v. Belgard,* 811 P.2d 211 (Utah App.1991) (trial court must expressly find good cause to set aside a waiver under Rule 12 of the Utah Rules of Criminal Procedure).