**2017 UT App 129**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ANGEL GARCIA-MEJIA,
Appellant.

Opinion
No. 20151095-CA
Filed July 28, 2017

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 141901008

Alexandra S. McCallum, Robin K. Ljungberg, and
Katherine A. Conyers, Attorneys for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES STEPHEN L. ROTH and JILL M. POHLMAN concurred.

MORTENSEN, Judge:

¶1     A jury convicted Defendant Angel Garcia-Mejia of sexually abusing five of his six children. Now, on appeal, Defendant argues that his convictions were based on insufficient evidence because the testimony of his children was "inherently improbable" and the evidence failed to establish the requisite mental state associated with his crimes. We affirm.

BACKGROUND

¶2     "Defendant is appealing from a jury verdict; thus we recite the facts in a light most favorable to the jury's verdict, but present conflicting evidence to the extent necessary to clarify the

issues raised on appeal." *See State v. Vigil*, 922 P.2d 15, 18 (Utah Ct. App. 1996) (citation and internal quotation marks omitted).

¶3      On Son's ninth birthday, while traveling to pick up his cake, Son confided to Mother that Defendant "was doing inappropriate things" to him. Son explained that one morning, about a month before, Defendant had been lying in bed, covered by a blanket. He pushed Son's "head down on his private" and Defendant's blanket-covered "middle private in the front" went inside Son's mouth, hurting Son's throat. Furthermore, Defendant and Son sometimes shared a bed, and "two or three times a week," Defendant would "pull down his underwear," then pull down Son's "pants a little bit and then put" Defendant's "private" on Son's unclothed butt cheek. Defendant sometimes masturbated while Son was in bed next to him.

¶4      Mother drove home immediately, separated the children, and asked each of them if Defendant had "ever done anything that is inappropriate and made them feel uncomfortable." Including Son, five of the six children told Mother that Defendant had sexually abused them. The State charged Defendant with one count of sodomy on a child, a first degree felony, and eight counts of aggravated sexual abuse of a child, also first degree felonies.

¶5      At trial, Son's twin brother (Twin) testified that when he and Defendant slept in the same bed, Defendant "did some bad stuff" to him, including touching Twin's "private." Twin clarified, "The one that I use to pee with." Defendant would "move his hand" while touching Twin. Other times, Defendant would "pull down his pants" and "try and put his private up" Twin's "butt." When this happened, Defendant's penis would touch the "outside, like [the] butt cheek," sometimes over Twin's pants and sometimes on his bare skin.

¶6      Another of Son's brothers (Brother) testified about interactions with Defendant when Brother was nine years old. He explained that in the bathroom, Defendant "touched me in

my private spot . . . [with h]is hand" when Brother's clothes were off. And while the two were in Defendant's bed, Defendant, with his hand, touched Brother in his "private spot" over Brother's clothes. Brother later clarified that when he referred to his "private spot" he meant his penis. The touching in the bathroom and in Defendant's bed happened "more than one time." Brother also recounted abuse that had happened while he was showering with Defendant. Defendant "put his private spot in [Brother's] butt," touching Brother's "butt cheek."

¶7    Son's oldest brother (Oldest) testified to events that occurred when he was eleven years old. When he was alone with Defendant in Defendant's bedroom, "more than one time," Defendant put his hands down Oldest's pants, touching his "front private" inside his underwear; Defendant "was moving his hand" while inside Oldest's underwear. Oldest further testified that he and Defendant sometimes showered together. While in the shower, Defendant "was trying to put his front private up [Oldest's] butt" when his penis touched "the left part of" Oldest's butt cheek. Oldest also testified that he was present in Defendant's bedroom on the morning that Defendant "was putting his private in [Son's] mouth" and "holding" Son's head. *See supra* ¶ 3.

¶8    Finally, Son's sister (Sister) testified that, when she was twelve years old, Defendant "would touch [her] breast . . . [o]n top of [her] clothes." This happened "a couple of times," and each time, she "would try to slap him away." Sister also testified that Defendant "once tried to touch [her] below the waist." "He tried to put his hand . . . in [her] pants, but he didn't succeed because [she] slapped him away."

¶9    Defendant maintained that he never touched his children inappropriately. He suggested that someone might have encouraged the kids to fabricate their accusations against him. He also believed that the children had learned about different sexual behaviors from inappropriate television shows or movies and were "acting that stuff out." In an interview with police,

Defendant acknowledged that Son's mouth had "come into contact with his penis," but he explained that "it hadn't happened the way the kids were saying it [had]." Instead, according to Defendant, one morning he was in bed with an erection. Son "grabbed his erect penis through the blanket, and one of the boys," either Oldest or Twin, "pushed [Son's] head onto his penis which was under the blanket." Defendant was on the phone and "told the boys to stop it." Although Defendant denied all of the other incidents testified to by the children, he admitted showering with the boys and claimed that the boys did "sexually inappropriate things in the shower in front of him."

¶10 Defendant moved for a directed verdict on all of the charges against him. The trial court denied the motions, concluding that the State had presented sufficient evidence from which a reasonable jury could find Defendant guilty of sodomy on a child and aggravated sexual abuse of a child. The court highlighted the testimony given by Son and Oldest that Defendant had pushed Son's "head down on his privates." It further specified that the testimony regarding "the way the touching occurred," "the number of times that it occurred and so forth, are all things that would lead to an inference that would be able to establish a prima facie case." The jury thereafter returned guilty verdicts on all nine counts. Defendant timely appealed.

ISSUE AND STANDARD OF REVIEW

¶11 Defendant asks that we review the question of whether his "convictions for sodomy on a child and aggravated sexual abuse of a child should be reversed on all counts." He argues that "reasonable minds must have entertained a reasonable doubt that he committed these offenses" because "the State produced insufficient evidence to support his convictions."

¶12 "To determine whether there was sufficient evidence to convict a defendant, we do not examine whether we believe that

the evidence at trial established guilt beyond a reasonable doubt." *State v. Holgate*, 2000 UT 74, ¶ 18, 10 P.3d 346. Instead, we consider whether, "after viewing the evidence and all inferences drawn therefrom in a light most favorable to the jury's verdict, the evidence is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted." *Id.* (citation and internal quotation marks omitted).

ANALYSIS

¶13 Defendant argues that the evidence here was too inconclusive or inherently improbable to "demonstrate that he intentionally/knowingly/recklessly engaged in a sexual act involving his penis and [Son's] mouth" and thus to sustain a conviction of sodomy on a child. He similarly argues that the evidence was insufficient to sustain his convictions of aggravated sexual abuse of a child because "there is little to show that he" engaged in the conduct alleged "with the intent to gratify a sexual desire." The evidence was inconclusive or improbable, he contends, because: it was contradicted by his own account; his account was corroborated in part by Oldest; the boys' testimonies contained inconsistencies; the children failed to make any allegations of sexual abuse when they spoke with an interviewer from DCFS the previous year; and there was "evidence" that the children's testimonies resulted from coercion or exposure to sexually inappropriate materials.

I. Sodomy on a Child

¶14 "A person commits sodomy upon a child if the actor engages in any sexual act upon or with a child who is under the age of 14, involving the genitals or anus of the actor or the child and the mouth or anus of either person, regardless of the sex of either participant." Utah Code Ann. § 76-5-403.1(1) (LexisNexis Supp. 2016). Because the statute containing "the definition of the

offense does not specify a culpable mental state[,] . . . intent, knowledge, or recklessness shall suffice to establish criminal responsibility." *See id.* § 76-2-102 (2012).

¶15     Defendant's conviction for sodomy on a child was based on his behavior one morning when he pushed Son's head down toward his blanket-covered penis, which went inside Son's mouth, hurting Son's throat. Son and Oldest both testified that this happened, and Defendant's own version of events included that Son's "head" was pushed "onto his penis which was under the blanket." The fact contested at trial, then, was whether Defendant or another child had pushed Son's head down.

¶16     Defendant argues that "the State failed to demonstrate that he recklessly/knowingly/intentionally caused [Son's] mouth to come in contact with his penis." Defendant lumps together the three possible mental states throughout his brief and thus fails to acknowledge that the evidence needed to support a conviction based on one mental state might vary significantly from the evidence needed to support another. For instance, he does not discuss the possibility that his version of events might alone support a conviction for sodomy on a child, where Defendant does not contest that Son's mouth came in contact with Defendant's penis, *see id.* § 76-5-403.1 (Supp. 2016), and the Utah Code defines "recklessly" as when an actor "is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur," *id.* § 76-2-103(3) (2012). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.* And his argument on appeal, that the "evidence suggests that [Son's] contact with his penis was . . . inadvertent," is not necessarily inconsistent with a finding that Defendant acted recklessly.

¶17     But we need not decide the question of recklessness because the evidence was sufficient to support a finding that Defendant acted intentionally. *See id.* § 76-2-104(2) (setting forth

the hierarchy of mental states and directing that if "acting recklessly is sufficient to establish the culpable mental state for an element of an offense, that element is also established if a person acts intentionally or knowingly"). Defendant engaged in the conduct at issue intentionally "or with intent or willfully with respect to the nature of his conduct" if it was "his conscious objective or desire to engage in the conduct." *Id.* § 76-2-103(1). Son testified that Defendant pushed his head down to Defendant's penis and that Defendant's penis went in his mouth. Oldest testified that Defendant "put[] his private in [Son's] mouth" while "holding" Son's head. This testimony regarding Defendant's volitional act of holding Son's head supports a finding that Defendant intentionally committed sodomy on a child because it demonstrates that it was Defendant's "conscious objective or desire" to engage in a "sexual act upon or with" Son "involving the genitals" of Defendant "and the mouth" of Son. *See id.*; *id.* § 76-5-403.1(1) (Supp. 2016).

¶18 Defendant contests that the evidence was sufficient to support such a finding. In his view, the evidence "suggests that the alleged sodomy on a child did not happen the way the kids were saying it [had]." Defendant points out that in his version of events, he "was under the blankets with a morning erection" while "speaking on the phone" when either Twin or Oldest "pushed [Son's] head onto his penis which was under the blanket." He also points out that this "account was corroborated in part by [Oldest], who recalled that [Defendant] was on the phone when the incident occurred."[1] Defendant concludes that his "account—including evidence that his attention was focused on his telephone conversation and evidence that his penis remained underneath the blanket—suggests that he did not recklessly/knowingly/intentionally" commit sodomy on a child. Thus, Defendant's argument on this point is that there was

---

1. So, in the same breath, Defendant encourages us to disregard Oldest's version of events while simultaneously using it to support his own.

contradictory evidence presented at trial and that the jury should have believed the evidence presented that favored Defendant.

¶19    In this regard, Defendant's argument mirrors the one set forth by the defendant in *State v. Howell*, 649 P.2d 91 (Utah 1982), who "contend[ed] that the evidence, as a matter of law, [was] insufficient to justify his conviction." *Id.* at 97. And the Utah Supreme Court's analysis in that case applies here:

> Defendant's contention that the evidence adduced at trial was insufficient to support his conviction presumes that the jury was obligated to believe the evidence most favorable to defendant rather than that presented in opposition by the State. Such is not the law. The existence of contradictory evidence or of conflicting inferences does not warrant disturbing the jury's verdict. It is within the exclusive province of the jury to judge the credibility of the witness and the weight of the evidence. It is not sufficient that on appeal an appellate court views the evidence as less than wholly conclusive. To overturn a verdict on the ground of insufficiency of the evidence, this Court would have to find that reasonable minds would entertain a reasonable doubt as to guilt. Clearly there is substantial credible evidence to support defendant's conviction, and it was not, as contended, so lacking and insubstantial that reasonable men could not have reached the verdict beyond a reasonable doubt.

*Id.* (citations omitted). The State presented evidence. Defendant presented conflicting evidence. That the jury resolved the conflict against Defendant does not mean that the evidence was legally insufficient to support Defendant's conviction; it means that the jury engaged in its appointed role as factfinder. *See id.*

¶20 In addition to reiterating his version of events and arguing that the jury should have believed it, Defendant argues that Son's and Oldest's testimonies about this incident were "inherently improbable" because they "suffered from multiple inconsistencies." (Citing *State v. Robbins*, 2009 UT 23, ¶ 8, 210 P.3d 288.) "Moreover," Defendant argues, "the children did not make any allegations of sexual abuse when they were interviewed by DCFS," the year before the allegations in this case came to light. Finally, Defendant argues that there was evidence that the allegations against him were the result of coercion.

¶21 Defendant suggests that the jury should not have believed the boys' accounts, because, for instance, Son "testified inconsistently regarding whether [Defendant] would sleep with his underwear on or off when [Son] was in the bed" and Oldest testified that he witnessed inappropriate shower behavior between Defendant and Twin, while Twin "affirmatively testified that he never showered with" Defendant. But Defendant fails to convince us that the boys' testimonies were inherently improbable. For one thing, the inconsistencies Defendant alleges had nothing to do with the event leading to Defendant's conviction for sodomy on a child. And inasmuch as Defendant argues that the inconsistencies generally called the boys' credibility into question, we have previously indicated that even where a witness's testimony is inconsistent, the "choice between conflicting testimony is within the province of the jury." *State v. Pedersen*, 802 P.2d 1328, 1330 (Utah Ct. App. 1990) (citation and internal quotation marks omitted).

¶22 In *Pedersen*, a minor's "testimony at trial was somewhat different from her previous statements," but the inconsistencies did not "conflict[] as to the material elements of the crime charged," the minor "was not improperly influenced by the questions posed to her during examination," and the minor "testified to all the elements of the crime charged." *Id.* at 1330–31. "We view[ed] [that] case as hinging on the credibility of the witnesses," and because "[c]redibility is within the province of

the jury, to which we defer," we affirmed the defendant's convictions. *Id.* at 1331, 1332. Like *Pedersen*, the case before us hinges on the credibility of the witnesses. And because the jury determined the boys' accounts of this particular incident were more credible than Defendant's, we defer to that finding.

¶23   Defendant also argues that the boys' testimonies were inconclusive or inherently improbable because the children failed to make any allegations of sexual abuse when, the previous year, they were interviewed by DCFS. However, the charges being investigated at that time dealt with potential physical, not sexual, abuse of the children. Further, we have previously noted that "[d]elayed discovery and reporting are common" with "sexual offenses involving child victims." *State v. Hoyt*, 806 P.2d 204, 209 (Utah Ct. App. 1991); *see also State v. Bair*, 2012 UT App 106, ¶ 47, 275 P.3d 1050 (explaining that the commonness of delayed disclosure in child sexual abuse cases is "a fact already recognized by Utah courts"). Ultimately, the evidence adduced at trial on this point was slim, to say the least. On cross-examination, Mother was asked, "So November of 2013, did you make a report to DCFS?" She indicated that she had and explained that the report had nothing to do with sexual abuse. She was then asked, "Now during those interviews, to your information, did any of the children disclose any of what you're talking about here today?" And she said, "No." Finally, Defendant's attorney asked, "And that was during that same time period, wasn't it?" to which Mother responded, "A little bit before, yes." This was the extent of the information the jury heard regarding the DCFS interviews with the children the year before the sexual abuse allegations came to light, and it is the entirety of the evidence on which Defendant asks us to disturb the jury's verdict. We decline to do so.

¶24   Regarding Defendant's contention that the evidence was insufficient to support his conviction because the children's allegations were the result of coercion, we are similarly unconvinced. The jury heard testimony that Defendant believed the children had been encouraged to fabricate their allegations.

But this belief was unsupported by any details, and Defendant never indicated who he thought might have been behind such encouragement, even though he was asked specifically by a detective to identify who might have done so. The jury also heard that the children sometimes watched sexually inappropriate materials. But as we have already discussed, the jury is tasked with factfinding. And it was free to believe or not to believe the evidence regarding fabrication. That it chose not to believe does not mean that Defendant's conviction is unsupported by the evidence. *See State v. Kazda*, 545 P.2d 190, 192 (Utah 1976) ("The jury, whose prerogative it is to choose what evidence it will believe, chose to believe that of the State.").

¶25　In short, Defendant argues that the evidence regarding the sodomy charge, including what he deems to be inconsistent and inherently improbable testimony from the many victims, is akin to *State v. Robbins*, 2009 UT 23, 210 P.3d 288. We disagree. In *Robbins*, our supreme court determined that "the clear record of inconsistencies in [the witness's] testimony, and in light of the clarification of our inherent improbability standard that [the court] announce[d]" in that case, warranted vacating the defendant's conviction. *Id.* ¶ 25. The facts underlying that determination included, among others, the following: The alleged victim was interviewed by DCFS and assured the interviewer that Robbins had never abused her. *Id.* ¶ 4. She was interviewed a second time and told the interviewer that "she felt safe at home." *Id.* ¶ 6. The victim thereafter accused Robbins of an incident of sexual abuse that had allegedly occurred three years previously. *Id.* ¶ 7. Her "recollection of the alleged sexual abuse incident suffered from multiple inconsistencies," including what age she was when the abuse occurred, what sort of clothes she was wearing at the time, and the details of the type and duration of the touching. *Id.* ¶ 8. When asked about the inconsistencies, her explanation was "that she had a hearing problem like her grandfather, a fact objectively not true." *Id.*

¶26　Recently, the supreme court reaffirmed the decision in *Robbins* and clarified when it is appropriate for an appellate

court to reevaluate a factfinder's credibility determination. *See generally State v. Prater*, 2017 UT 13, 392 P.3d 398. The court explained, "In *Robbins*, the child's additional patently false statements and not just her inconsistent accounts, which could be explained by her age and lack of sophistication, allowed the court to reassess her credibility." *Id.* ¶ 38. "It was the inconsistencies in the child's testimony *plus* the patently false statements the child made *plus* the lack of any corroboration that allowed [the] court to conclude that insufficient evidence supported Robbins's conviction." *Id.* (emphasis in original).

¶27 The facts before us differ dramatically from *Robbins*. As the court in *Prater* pointed out, the court in *Robbins* could reevaluate the child's credibility, in part, because the child was the sole witness and there was no corroborating evidence. *Id.* ¶ 36. Multiple victim-witnesses exist here, all of whom testified to similar abuse at the hands of Defendant. In addition, Defendant's own version of events largely corroborates the testimony provided by the boys with regard to the sodomy charge. Beyond the corroborating evidence that distinguishes this case from *Robbins*, any inconsistencies in the boys' testimonies can "be explained by [their] age and lack of sophistication," and there were no "patently false statements" made. *See id.* ¶ 38. Given the framework clarified in *Prater*, this is simply not the sort of case where this court is able to reevaluate the factfinder's credibility determinations.

¶28 We are not persuaded that the alleged inconsistencies in the boys' testimonies, the delay in reporting Defendant's abuse, or any evidence suggesting fabrication of the allegations render the evidence against Defendant insufficient as a matter of law. We therefore affirm Defendant's conviction for sodomy on a child.

## II. Aggravated Sexual Abuse of a Child

¶29 The jury properly found Defendant guilty of aggravated sexual abuse of a child if it found that he touched "the anus,

buttocks, or genitalia of any child, the breast of a female child, or otherwise [took] indecent liberties with a child . . . with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant." *See* Utah Code Ann. § 76-5-404.1(2) (LexisNexis Supp. 2016). On appeal, Defendant focuses his argument on the intent element of the crime: "Specifically, he argues that the evidence failed to show that he acted with the intent to gratify a sexual desire." Defendant instead suggests that "any such contact was incidental and nonsexual and occurred when [Defendant] was 'roughhousing' with the children, be it in the shower or in his bedroom."[2]

¶30    There was sufficient evidence presented from which the jury could have inferred that Defendant engaged in the behavior at issue with the intent to arouse or gratify sexual desire. Defendant is correct that "[n]one of the children testified that [Defendant] had an erection during these encounters" and that "there was no evidence that [Defendant] said anything during these interactions." But "[i]t is well established that intent can be proven by circumstantial evidence. [Intent] may be inferred from the actions of the defendant or from surrounding circumstances. The factfinder . . . is entitled to draw all reasonable inferences from the facts and from the actions of the defendant." *State v. Whitaker*, 2016 UT App 104, ¶ 13, 374 P.3d 56 (omission and second alteration in original) (citations and internal quotation marks omitted); *accord State v. Davis*, 711 P.2d 232, 234 (Utah 1985) (per curiam) ("As to defendant's intent or state of mind,

---

2. To the extent Defendant attempts to challenge the evidence supporting the actus reus of his crimes, it is only by reiterating his argument that the children's testimonies were "inherently improbable" and the result of coercion, in the same way he challenged his sodomy-on-a-child conviction. We determine that the jury was free to believe the evidence supporting Defendant's convictions for aggravated sexual abuse of a child, just as it was free to believe the evidence supporting his conviction for sodomy on a child. *See supra* ¶¶ 18–28.

intent need not be proved by direct evidence, but may be inferred from defendant's conduct and surrounding circumstances."); *State v. Murphy*, 674 P.2d 1220, 1223 (Utah 1983) ("[I]ntent need not be proved by direct evidence" but "may be inferred from the actions of the defendant or from surrounding circumstances."); *State v. Kennedy*, 616 P.2d 594, 598 (Utah 1980) ("Wherever a special intent is an element of a criminal offense, its proof must rely on inference from surrounding circumstances."); *State v. Cooley*, 603 P.2d 800, 802 (Utah 1979) ("Specific intent may be inferred from acts. It may be shown like many other facts from the surrounding circumstances." (citation and internal quotation marks omitted)); *State v. Robertson*, 2005 UT App 419, ¶ 15, 122 P.3d 895 ("[I]ntent . . . is a state of mind, which is rarely susceptible of direct proof[;] it can be inferred from conduct and attendant circumstances in the light of human behavior and experience." (citation and internal quotation marks omitted)); *see also In re D.M.*, 2013 UT App 220, ¶ 11, 310 P.3d 741 (holding that in light of an individual's "conduct in exposing and touching [another's] testicles and the attendant circumstances," the factfinder's "inference that [the individual] possessed a sexual intent" was not clearly erroneous (citation and internal quotation marks omitted)).

¶31   "Circumstantial evidence has routinely been used to prove specific intent." *Whitaker*, 2016 UT App 104, ¶ 14.

> When intent is proven by circumstantial evidence, we must determine (1) whether the State presented any evidence that [the defendant] possessed the requisite intent, and (2) whether the inferences that can be drawn from that evidence have a basis in logic and reasonable human experience sufficient to prove that [the defendant] possessed the requisite intent.

*Id.* ¶ 13 (alterations in original) (quoting *State v. Holgate*, 2000 UT 74, ¶ 21, 10 P.3d 346).

¶32   We therefore first consider whether the State presented any evidence that Defendant sexually abused his children with the intent to arouse or gratify sexual desire. *See id.* We conclude that the State did. The evidence includes the testimony of five children, all twelve years of age or younger, that Defendant had sexual contact with them on multiple occasions. The contact was similar among the four boys. All four suffered abuse when Defendant's penis touched their butt cheeks. *See* Utah Code Ann. § 76-5-404.1(2). Son testified that Defendant would "pull down his underwear," then pull down Son's "pants a little bit and then put" Defendant's "private" on Son's unclothed butt cheek. Son also stated that Defendant sometimes masturbated while Son was in bed next to him. Twin testified that Defendant would "pull down his pants" and "try and put his private up" Twin's "butt." Brother testified that while he was showering with Defendant, Defendant "put his private spot in [Brother's] butt," touching Brother's "butt cheek." And Oldest testified that while showering with Defendant, Defendant "was trying to put his front private up [Oldest's] butt" when his penis touched "the left part of" Oldest's butt cheek. Three of the boys testified that Defendant touched their genitalia, and two of them said that he moved his hand while doing so. Twin testified that Defendant touched his "private." Brother testified that Defendant "touched me in my private spot . . . [with h]is hand" both over and under Brother's clothes. And Oldest testified that "more than one time," Defendant put his hands down Oldest's pants, touching his "front private" inside his underwear. This is evidence that Defendant's intent was to arouse or gratify sexual desire.

¶33   We next consider whether the inferences "that can be drawn from that evidence have a basis in logic and reasonable human experience sufficient to prove that" Defendant acted with the requisite intent. *See Whitaker*, 2016 UT App 104, ¶ 13 (citation and internal quotation marks omitted). We have previously determined that "the existence of multiple victims (and consequently multiple similar acts) supported an inference of intent." *See id.* ¶ 14. This reasoning applies here. That five children testified to abuse by the same perpetrator, four of them

giving very similar accounts,[3] cuts against Defendant's contention that any perceived sexual contact was actually "incidental and nonsexual and occurred when [Defendant] was 'roughhousing' with the children." So, too, does the specific evidence that Defendant would move or remove pants/underwear while engaging in the charged conduct. Son, Twin, Oldest, and Sister all testified that Defendant pulled down their underwear, pulled down his own underwear, or put or attempted to put his hand down their pants in order to touch them. The jury was entitled to draw an inference from Defendant's repeated behavior that it was done with the intent to arouse or gratify a sexual desire. *See id.*; *see also State v. Singh*, 2011 UT App 396, ¶ 10, 267 P.3d 281 ("Given the similarity of the

---

3. We acknowledge that the abuse Sister suffered varied from the abuse suffered by her brothers, but Defendant does not separately challenge the evidence supporting the one count of aggravated sexual abuse of a child stemming from his contact with Sister. Instead, he argues only that Sister's account, like that of her brothers, was "inherently improbable" because "there was evidence that the children's testimony" resulted from coercion. This argument has already been addressed. *See supra* ¶ 29 note 2. We nevertheless briefly note that where Defendant generally alleges that his sexual contact with the children was the incidental result of roughhousing with them, the evidence presented at trial lends no support for the idea that his touching of Sister's breasts happened in this manner. Sister testified that Defendant would roughhouse and joke around with her brothers, but she never indicated that he did the same with her. Mother similarly testified that Defendant and "the boys" did "a lot of roughhousing." And where Sister testified that Defendant "would come up to [her] and—he was very hesitant, but he would touch [her] breast," it is dubious that Defendant's intention was anywhere near as innocent as he suggests. We thus conclude that the jury could have inferred beyond a reasonable doubt that Defendant touched Sister with the intent to arouse or gratify a sexual desire.

witnesses' testimony regarding the sexual nature of Defendant's actions and the trial court's credibility determinations, sufficient evidence supported the court's inference that Defendant committed his acts against the victim with the intent to arouse or sexually gratify himself.").

¶34 Circumstantial evidence existed from which the jury could have reasonably inferred that Defendant engaged in the behavior at issue with the intent to arouse or gratify a sexual desire. *See* Utah Code Ann. § 76-5-404.1(2) (LexisNexis Supp. 2016). Accordingly, we decline to disturb the jury's verdict finding Defendant guilty of eight counts of aggravated sexual abuse of a child.

CONCLUSION

¶35 There was sufficient evidence to convict Defendant of sodomy on a child and aggravated sexual abuse of a child. And because we generally defer to the jury's role in determining credibility and finding facts, we affirm Defendant's convictions.

_____